IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JINENDRA JINADASA, | ) | CIVIL NO. 14-00441 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION TO |
| vs. | ) | DISMISS FOURTH AMENDED |
| | ) | COMPLAINT |
| BRIGHAM YOUNG UNIVERSITY- | ) | |
| HAWAII, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

**I.        INTRODUCTION.**

        Defendant Brigham Young University-Hawaii ("BYU

Hawaii") moves to dismiss Plaintiff Jinendra Jinadasa's Fourth

Amended Complaint.  The motion is granted in part and denied in

part.  The court also strikes Jinadasa's untimely supplemental

memorandum in opposition to the motion, ECF No. 70.  See Local

Rule 7.4 ("Any opposition or reply that is untimely filed may be

disregarded by the court or stricken from the record.  No further

or supplemental briefing shall be submitted without leave of

court.").

**II.       FACTUAL BACKGROUND.**

        Jinadasa, who is proceeding pro se, is a Web Architect

at BYU Hawaii.  See ECF No. 61, PageID # 515.  Jinadasa alleges

that he is the "only African, black (dark skinned hue color)

administrative staff" member at BYU Hawaii and that he is from Ethiopia, Africa.  See id. ¶¶ 3, 10, PageID # 517, 519.

In his Fourth Amended Complaint, filed on November 12, 2015, Jinadasa asserts claims of (a) sex discrimination in violation of Title IX, 20 U.S.C. § 1981 (Counts I and III); (b) race discrimination in violation of 42 U.S.C. § 1981 (Counts I and III); (c) unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000 (Count II); (d) race, color, and national origin discrimination in violation of Title VII, 42 U.S.C. § 2000 (Count IV); (e) violation of civil and constitutional rights (Count V); and (f) intentional infliction of emotional distress (Count VI).

**III.    STANDARD.**

The standard of review for a motion to dismiss was set forth in this court's order of May 27, 2015.  See 2015 WL 3407832, *1-*2.  That standard is incorporated herein by reference.

**IV.    ANALYSIS.**

> **A.    The Court Declines to Dismiss the Fourth Amended Complaint As Untimely.**

At the hearing on the Motion to Dismiss the Third Amended Complaint, the court gave Jinadasa leave to file a Fourth Amended Complaint provided the court received the document no later than November 10, 2015.  BYU Hawaii asks this court to dismiss the Fourth Amended Complaint because Jinadasa did not

file it until November 12, 2015, two days past the deadline. Although Jinadasa has not advanced any valid reason for having flouted court rules and court deadlines, the court declines BYU Hawaii's invitation to rely on Jinadasa's failure to file his Fourth Amended Complaint on time as a reason to dismiss this action.  Under the circumstances of this case, dismissal appears to be a disproportionate sanction.

While declining to dismiss the Fourth Amended Complaint as untimely, the court stresses that Jinadasa must in the future follow court rules and deadlines to the letter or face adverse consequences, including but not limited to the dismissal of this action or the granting of motions.

> **B.  Jinadasa Lacks Standing to Assert Claims on Behalf of Others.**

As an initial matter, the court dismisses any claim Jinadasa may be asserting on behalf of others.  This jurisdictional determination that Jinadasa lacks standing to assert claims of others is required by Article III, section 2, of the Constitution, which confines federal courts to deciding cases or controversies.

To qualify for adjudication by a federal court, a plaintiff must show that an actual controversy exists at all stages of the case.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 63 (1997).  No case or controversy exists if a plaintiff lacks standing to make the claims asserted.  See

3

White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (stating that standing pertains to a federal court's subject matter jurisdiction).  To have standing to maintain a claim, Jinadasa must demonstrate: (1) an injury in fact--an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct--an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

This court has already explained to Jinadasa that he may not assert claims belonging to others:

> In his prayer for relief, Jinadasa requests that this court issue a permanent injunction "urging the defendants and Brigham Young University-Hawaii from employment practices or retaliations that discriminates against blacks, polynesians, women, and other non-caucasian minorities at the university." ECF No. 29, PageID # 109.  Jinadasa lacks standing to pursue such relief.  See Patee v. Pac. Nw. Bell Tel. Co., 803 F.2d 476, 478-79 (9th Cir. 1986) (employees lack standing to bring Title VII suit based on discrimination against others); Sidari v. Orleans Cnty., 174 F.R.D. 275, 285 (W.D.N.Y. 1996) (striking plaintiff's request for relief on behalf of "other persons similarly situated" based on lack of standing).

4

Jinadasa v. Brigham Young Univ.-Hawaii, 2015 WL 3407832, at *8 (D. Haw. May 27, 2015).  The court therefore dismisses any claim that Jinadasa may be asserting on behalf of others.

Whether any such claim is being asserted is actually unclear.  However, to the extent Jinadasa is attempting to assert claims on behalf of others, he may not do so.  These claims might include, if asserted: (1) claims that Polynesians and other minorities were not selected for jobs or were "talked down" to (see Fourth Amended Complaint ¶¶ 12-13, 15, 36-37, ECF No. 61, PageID # 519-20, 526); (2) claims that Polynesians were demoted and kicked out of BYU Hawaii housing (see id. ¶ 14, PageID # 520); (3) claims that Polynesians are underrepresented at the management level, were terminated, or received less favorable termination packages (see id. ¶¶ 20, 29, 45, PageID # 521, 524, 527-28); (4) claims that a friend from the Philippines was being paid less than less-qualified Caucasian employees (see id. ¶ 22, PageID # 522); and (5) a prayer for relief in the form of the publishing of all job postings to ensure that "Polynesians, blacks, and other minorities" are not taken advantage, to the extent the prayer is seeking relief for others (see id., Prayer for Relief ¶ P, PageID # 538-39).

The court has attempted to discern whether Jinadasa is attempting to plead a class action.  Given the total lack of even a rudimentary description of a class that includes both Jinadasa

and others, as well as Jinadasa's inability to act as counsel for the class, the court is not treating this as a class action.

C. **The Fourth Amended Complaint Asserts a Viable Disparate Treatment Race Discrimination Claim, but The Statute of Limitations Has Run on Any Title VII Claim Arising Before December 9, 2010.**

In the Fourth Amended Complaint, Jinadasa asserts that he suffered race discrimination in violation of 42 U.S.C. § 1981 (Counts I and III) and race, color, and national origin discrimination in violation of Title VII, 42 U.S.C. § 2000 (Count IV). At the hearing on BYU Hawaii's motion to dismiss Jinadasa's Third Amended Complaint, Jinadasa clarified that, although that complaint mentioned national origin and color discrimination, he was asserting only race discrimination claims. See ECF No. 63, PageID # 554. Notwithstanding this statement, at the hearing on the present motion, Jinadasa indicated that he wants to proceed with Title VII disparate treatment claims based on race and national origin, but not separately on color.

In relevant part, § 1981 prohibits race discrimination in the making and enforcement of contracts. Title VII similarly prohibits discrimination based on race, color, religion, sex, or national origin:

> (a)  It shall be an unlawful employment practice for an employer --
>
> > (1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

> conditions, or privileges of employment,
> because of such individual's race,
> color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2.

A prima facie case of disparate treatment requires a plaintiff to establish: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified; (3) the plaintiff suffered an adverse employment decision; and (4) employees outside the protected class with comparable qualifications and work records did not suffer similar adverse employment decisions. See, e.g., White v. Pac. Media Grp., Inc., 322 F. Supp. 2d 1101, 1110 (D. Haw. 2004). A plaintiff must demonstrate that his or her situation is similar to that of employees who received more favorable treatment in all material respects. See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). However, "a plaintiff is not obligated to show disparate treatment of an *identically* situated employee." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) (cited approvingly in Selig). Instead, "individuals are similarly situated when they have similar jobs and display similar conduct." Hawn v. Exec. Jet Mgmt. Inc., 615 F.3d 1151, 1160 (9th Cir. 2010) (citing Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) (finding employee not similarly situated if he "did not engage in problematic conduct of comparable seriousness" to Plaintiff's conduct)).

The Supreme Court has held that Title VII's prohibition on discrimination "not only covers 'terms' and 'conditions' in the narrow sense, but evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quotation marks and citation omitted). The Ninth Circuit defines "adverse employment action" broadly. See Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004). However, not every employment decision is an adverse employment action. For example, ostracism is not, by itself, enough to show an adverse employment decision. See Strother v. S. California Permanente Med. Grp., 79 F.3d 859, 869 (9th Cir. 1996). Instead, the Ninth Circuit has stated that adverse employment actions must materially affect the compensation, terms, conditions, or privileges of employment. See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quotation marks and citations omitted). Thus, assigning more or more burdensome work may be an adverse employment action. Id. Similarly, a reduction in pay, transfer of job duties, or undeserved performance ratings may also be an adverse employment action. See Fonseca, 374 F.3d at 847.

In the order of May 27, 2015, the court found that the Second Amended Complaint insufficiently asserted a Title VII disparate treatment claim based on contentions that BYU Hawaii

8

had subjected Jinadasa to adverse employment actions by denying

him: (1) equal compensation; (2) "advancement opportunities";

(3) "employee awards"; (4) "proper access to web server and

tools"; (5) the opportunity to attend conferences on the U.S.

mainland; (6) exclusion from meetings and "technical procedures";

(7) exclusion from office parties; and (8) lack of response to

"technical requests and communications."

The court ruled:

> Jinadasa's allegations that he was denied
> employee awards, denied proper access to a
> web server and unspecified "tools," excluded
> from office parties, and ignored in his
> "technical requests and communications" do
> not provide a sufficient basis for this court
> to infer that Jinadasa was subject to an
> adverse employment action.  No allegations in
> the Second Amended Complaint suggest that
> those actions caused "a material employment
> disadvantage, such as a tangible change in
> duties, working conditions or pay."

Jinadasa v. Brigham Young Univ.-Hawaii, 2015 WL 3407832, at *4

(D. Haw. May 27, 2015).

With respect to Jinadasa's contention that he was

denied advancement opportunities, denied the opportunity to

attend conferences on the mainland, and excluded from "key

decision making meetings" and "technical procedures that affected

[his] job responsibilities," the court noted that these things

may concern adverse employment actions, but ruled that Jinadasa

had failed to provide sufficient factual information regarding

those alleged actions and their effect on his compensation, terms, conditions, or privileges of employment.  Id. at *5.

The court additionally noted that Jinadasa's contention that he was denied equal compensation stated an adverse employment action.  However, because the Second Amended Complaint did not allege that Jinadasa was treated less favorably than similarly situated employees outside of Jinadasa's protected class, the court determined that the Second Amended Complaint did not allege a viable disparate impact claim based on unequal compensation.  Id. *5-*6.

In the motion to dismiss the Fourth Amended Complaint now before this court, BYU Hawaii argues that Jinadasa's claims are time-barred and that the allegations of disparate treatment are still insufficient to allege a viable claim.

>    **1.   Jinadasa's Title VII Claims Are Time-Barred If They Arise Out of Conduct Occurring Before December 9, 2010.**

Before considering Jinadasa's substantive Title VII claims, the court addresses BYU Hawaii's argument that the statute of limitations bars claims arising out of events that occurred more than 300 days before Jinadasa's filing of a charge with the Equal Employment Opportunity Commission ("EEOC").  "Title VII contains several distinct filing requirements which a claimant must comply with in bringing a civil action."  Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1172 (9th Cir. 1986),

as amended by 815 F.2d 570 (9th Cir. 1987).  A plaintiff must first exhaust administrative remedies before bringing a Title VII claim in this court.  See Sommatino v. United States, 255 F.3d 704, 707 (9th Cir. 2001).  A plaintiff does this by filing an administrative charge with the EEOC.  When a person also files a charge with a state or local agency, the EEOC charge must be filed "within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  See EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 585 (9th Cir. 2000) ("Although ordinarily the administrative charge must be filed within 180 days of the alleged unlawful employment practice, the deadline is extended to 300 days if the charge is initially filed with a state agency that enforces its own anti-discrimination laws.").

This period is not jurisdictional.  Instead, it serves as a limitations period.  See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

The court takes judicial notice of the original administrative charge that Jinadasa filed with the EEOC and the Hawaii Civil Rights Commission on October 5, 2011.  See ECF No.

11

65-3.  There is no dispute that 300 days before that date was December 9, 2010.  Additionally, Jindadasa has not asserted that the limitation period should have been tolled or that there is any other reason to include prior acts, such as in connection with a continuing hostile work environment claim.  With respect to Jindasa's claims for "discrete discriminatory acts," the court is governed by the Supreme Court's holding that such acts "are not actionable if time barred, even when they are related to acts allegedly in timely filed charges . . . .  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).

The court therefore concludes that Jinadasa's Title VII claims arising before December 9, 2010, are time-barred.  This includes claims arising out of:

(1) BYU Hawaii's selection of someone other than Jinadasa to become the Director of Communication in 2008.  Fourth Amended Complaint ¶ 16, ECF No. 61, PageID # 520;

(2) John Call's alleged receipt of a $10,000 raise and trips to training courses in or before 2008, while Jinadasa "was denied training trips" in 2009.  <u>Id.</u> ¶¶ 18-19, PageID # 521;

(3) Jinadasa's compensation of $30,000 less than Brian Jameson in 2009, to the extent such a claim seeks damages for the period before December 9, 2010.  <u>Id.</u> ¶ 23, PageID # 522.

To the extent the Fourth Amended Complaint asserts causes of action arising out of conduct in 2010, those claims are not barred on the face of the allegations in the Fourth Amended Complaint.  The court cannot tell from the four corners of that document whether the conduct occurred before or after December 9, 2010.  Whether such claims are time-barred may well be the subject of a motion for summary judgment.[1]

## 2.   Disparate Treatment Claims.

### a.   Unequal Pay Claims Based on Mindy Clark's Compensation May Proceed.

To the extent Jinadasa asserts a Title VII disparate treatment claim of unequal pay based on Bryan Jameson's compensation, the Fourth Amended Complaint lacks sufficient factual detail to make such a claim plausible.  The Fourth Amended Complaint lacks any specific allegation of Jameson's national origin.  At most, it alleges in paragraph 23 that Jameson, a Caucasian, was paid twenty to thirty thousand dollars more than Jinadasa was paid.  See ECF No. 61, PageID # 522.  But at the hearing on October 26, 2015, Jinadasa admitted that Jameson's "position was not comparable to mine."  ECF No. 63, PageID # 555.  Because the Fourth Amended Complaint does not allege that Jameson is similarly situated to Jinadasa, disparate

---

[1] Of course, even if claims are time-barred, evidence relating to time-barred claims may remain admissible in connection with timely claims under certain circumstances.

treatment claims based on race and national origin with respect to Jameson are dismissed.

To the extent Jinadasa asserts a Title VII disparate treatment claim of unequal pay based on sex and race, that claim survives the present motion to dismiss.  The Fourth Amended Complaint alleges that, in 2010, Jinadasa "came across a pay stub for a Caucasian co-worker Mindy Clark who was being paid $15K more than the plaintiff.  Mrs. Clark had lower education, lower seniority, poor work performance, smaller responsibilities, and less work experience than the plaintiff."  ECF No. 61, PageID # 523.  Jinadasa says that Clark was similarly situated to him.  Id., PageID # 522.  These allegations sufficiently allege a Title VII disparate treatment claim of unequal pay based on sex and race.  It differs from the claim in the Second Amended Complaint that was dismissed because it identifies the employee who is allegedly similarly situated to Jinadasa.  Because it lacks any allegation as to Clark's national origin, however, it insufficiently asserts a claim of national origin discrimination with respect to her.

At the hearing on the motion to dismiss, the court asked Jinadasa to identify any other factual allegation of sex discrimination.  He identified paragraph 60 of the Fourth Amended Complaint as alleging sex discrimination.  But that paragraph only alleges that BYU Hawaii "advanced white females without

14

master's degree to management position and gave them higher pay despite lack of education, experience, and technical skills." ECF No. 61, PageID # 531.  It does not allege that Jinadasa even applied for any of those positions such that discrimination could possibly be inferred through unequal treatment of similarly situated persons.  As noted above, Jindasa lacks standing to pursue claims of others, such as other individuals who applied for those positions.

To the extent BYU Hawaii believes that Clark and Jinadasa were not similarly situated, it may bring a motion for summary judgment to that effect, which would allow the court to examine evidence of both individuals' actual experience and positions at BYU Hawaii.

BYU Hawaii argued at the hearing that Jinadasa's Title VII sex discrimination claims should be dismissed as unexhausted. As the court noted in its order of May 27, 2015, ECF No, 51, PageID # 388, Jinadasa should have considered whether he failed to exhaust the sex discrimination claim before proceeding with it.  The court made that statement because neither of Jinadasa's Charges of Discrimination included checkmarks in the boxes indicating whether he was pursuing a sex discrimination claim. See ECF No. 65-3 and 65-4.  However, because the motion to dismiss did not clearly raise the issue, the court leaves for

another motion the issue of whether the sex discrimination claims were properly exhausted.

### b.   Unequal Discipline Claims May Proceed.

The Fourth Amended Complaint alleges that, in 2012, Jinadasa was suspended and banned from campus based on alleged violations of the university's Honor Code.  See Fourth Amended Complaint ¶ 31, ECF No. 61, PageID # 524.  It further alleges that "Caucasians and others who had committed more serious offenses were never disciplined."  Id.  It specifically alleges that Mindy Clark, a similarly situated female Caucasian employee, violated the Honor Code and used profanity but was not subjected to any discipline.  Id. ¶ 24, PageID # 522.  This allegation sufficiently alleges a disparate treatment claim of unequal discipline based on sex and race to survive the present motion to dismiss.  Again, however, the court is not here reaching the issue of whether Jinadasa's sex discrimination claim has been properly exhausted.

### c.   Any Claim Based on BYU Hawaii's Failure to Promote Jinadasa to Director of Enterprise Information Systems Is Dismissed.

Jinadasa alleges that, in 2010, he applied for the position of Director of Enterprise Information Systems, a position Jinadasa was qualified for.  Id. ¶ 26, PageID # 523.  Jinadasa says that he was not hired for the position.  Instead, the position went to Norman Black, who allegedly had a close

16

friendship with the person heading the search committee for that position and who allegedly did not meet the minimum qualifications for the position.  Id.  Jinadasa may not maintain a disparate treatment claim based on these factual allegations because he does not allege that Norman Black was hired as the Director of Enterprise Information Systems in a manner that involved impermissible discrimination.  The Fourth Amended Complaint does not identify Norman Black's race or national origin and it appears that Jinadasa and Norman Black are the same gender.  At most, Jinadasa complains that Norman Black's friendship with someone on the hiring committee affected an employment decision.  That is not a matter within the scope of Title VII.

> **d.   Jinadasa's Claim Based on BYU Hawaii's Decisions Concerning "Lead" Positions Is Dismissed.**

Paragraph 30 of the Fourth Amended Complaint alleges that Norman Black, in 2011, "had made Kimber Brothers lead over Project Management and Mr. Jameson lead on the server infrastructure.  The plaintiff was concerned that management and advancement opportunities were not being given to minorities such [as] plaintiff and other non-Caucasian employees."  ECF No. 61, PageID # 524.  These factual allegations are insufficient to state a viable claim of disparate treatment in violation of Title

VII because Jinadasa does not allege that he was qualified for the positions or that he even applied for the positions.

### e. Jinadasa's Claim That He Was Not Invited To Parties Is Dismissed.

Paragraph 33 of the Fourth Amended Complaint alleges that, in 2013, Jinadasa was not invited to office parties. This is not sufficient to state an adverse employment action. See Strother, 79 F.3d at 869 (ostracism is not, by itself, enough to show an adverse employment decision). Jinadasa does not allege in the Fourth Amended Complaint that the office parties were financed by BYU Hawaii or affected the compensation, terms, conditions, or privileges of employement. In the court's order dismissing the Second Amended Complaint, the court determined that Jinadasa's mere reference to not being invited to office parties was not an adverse employment action. See Jinadasa v. Brigham Young Univ.-Hawaii, 2015 WL 3407832, at *4 (D. Haw. May 27, 2015). While this court can certainly imagine circumstances in which being excluded from certain work-related events might constitute an adverse employment action, Jinadasa does not include sufficient allegations indicating that in the Fourth Amended Complaint. He therefore cannot be said to offer any reason for this court to reconsider its prior determination on this point.

      **f.**    **Claim Based on Being Omitted From Key Decision Meetings or Being Denied Tools and Access to Web Servers Are Dismissed.**

In dismissing Jinadasa's Second Amended Complaint, the court noted that being excluded from "key decision making meetings" and not having access to web servers and tools might concern adverse employment actions, but ruled that Jinadasa had failed to provide sufficient factual information supporting those allegations and their effect on his compensation, terms, conditions, or privileges of employment. Jinadasa v. Brigham Young Univ.-Hawaii, 2015 WL 3407832, at *5 (D. Haw. May 27, 2015). Jinadasa fails to provide any more detail in his Fourth Amended Complaint, which, in Paragraph 33, realleges the same facts with no more supporting detail. For the reasons set forth in the court's previous order, Jinadasa may not now proceed with a disparate treatment claim based on his exclusion from meetings, and being denied use of web servers and tools.

      **g.**    **The Claim Based on Being Placed in Stressful Situations Is Dismissed.**

In Paragraph 8 of the Fourth Amended Complaint, Jinadasa complains that BYU Hawaii placed him in stressful situations. Without more factual detail, that allegation is insufficient to allege an adverse employment action. See Baird v. Outlook Pointe, 2008 WL 4287382, at *16 (M.D. Pa. Sept. 17, 2008) (stating that Title VII "does not mandate a happy, pleasant, or stress-free work environment").

19

### D.   Jinadasa Asserts a Viable Sex Discrimination Claim Under Title IX.

Title IX provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681.  In other words, "Title IX prohibits gender discrimination by educational institutions receiving federal assistance." Stucky v. Hawaii Dep't of Educ., 2007 WL 602105, at *6 (D. Haw. Feb. 15, 2007). Accordingly, Title IX sex discrimination claims differ from Title VII sex discrimination claims in that Title IX claims additionally require a plaintiff to demonstrate the receipt of federal financial assistance.  See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

Other than for that additional element, courts look to Title VII when reviewing claims under Title IX.  See Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 867 (9th Cir. 2014) (noting that Supreme Court has often looked to Title VII in interpreting Title IX); Oona R.-S.- by Kate S. v. McCaffrey, 143 F.3d 473, 477 (9th Cir. 1998) (applying Title VII standards to hostile work environment claims under Title IX).  That is, the relevant analysis to be followed in connection with alleged employment discrimination on the basis of sex under Title IX is similar to that followed in Title VII.  See, e.g., Johnson v.

Baptist Med. Ctr., 97 F.3d 1070, 1072 (8th Cir. 1996) ("when a plaintiff complains of discrimination with regard to conditions of employment in an institution of higher learning, the method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case"); Murray v. N.Y. Univ. College of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) ("In reviewing claims of discrimination brought under Title IX by employees, whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII.").

Jinadasa does allege that BYU Hawaii receives federal funds in the form of federal aid for enrolled students. See ECF No. 61, PageID # 515. To allege a viable disparate treatment gender discrimination claim under Title IX, Jinadasa must also allege facts showing that his "employer acted with conscious intent to discriminate." Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002). Jinadasa's Fourth Amended Complaint does not assert sex discrimination based on direct evidence of discrimination. It instead is based on circumstantial evidence that a similarly situated female was allegedly treated more favorably than Jinadasa with respect to terms of employment. See Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000) (stating that prima facie case of disparate treatment under Title VII requires plaintiff to

demonstrate that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably").

The Fourth Amended Complaint alleges that an allegedly similarly situated female employee, Mindy Clark, was treated more favorably than Jinadasa.  Specifically, it alleges that she was not disciplined for using profanity, a violation of the university's Honor Code, and was paid $15,000 more than Jinadasa.  Jinadasa alleges that he was banned from campus for having allegedly violated the university's Honor Code.  See ECF No. 61 ¶¶ 24, 25, 31, PageID #s 522-25.  As discussed above with respect to Title VII sex discrimination claims, these allegations are sufficient to assert a viable Title IX sex discrimination claim.

### E.   Jinadasa States a Claim Against BYU Hawaii for Retaliation in Violation of Title VII.

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3.  A plaintiff establishes a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal

22

connection between the two.  Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

In the order of May 27, 2015, the court addressed Jinadasa's retaliation claim.  An adverse employment action for purposes of a retaliation claim is broader than for purposes of a disparate treatment claim, in that in a retaliation claim the adverse employment action need only be "reasonably likely to deter employees from engaging in protected activity."  Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2003).  This court accordingly determined earlier that the Second Amended Complaint sufficiently alleged adverse employment actions in the form of Jinadasa's being allegedly (1) banned from the BYU Hawaii campus; (2) barred from attending a worship service; (3) barred from attending a family wedding on the BYU Hawaii campus; and (4) singled out for violation of BYU Hawaii policy while more severe violations by others were ignored.  Jinadasa, 2015 WL 3407832, at *6.  The court concluded, however, that the Second Amended Complaint did not sufficiently allege a claim because nothing in the pleading provided a causal connection between the adverse employment actions and the filing of his charges of discrimination.  Id.

The Fourth Amended Complaint cures that deficiency.  It adds purported additional adverse employment actions: (5) being given bad reviews; (6) denied training trips and awards; (7)

23

being yelled at; and (8) being left out of key decision making.
See ECF No. 61, PageID # 516.  The Fourth Amended Complaint also
alleges that Jinadasa was not invited to parties.  The Ninth
Circuit has held that ostracism is not an adverse employment
action for purposes of Title VII retaliation claims.  See Brooks
v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000) (stating
with respect to Title VII retaliation claim, "Because an employer
cannot force employees to socialize with one another, ostracism
suffered at the hands of coworkers cannot constitute an adverse
employment action."); see also Cooper v. S. Cal. Edison Co., 170
F. App'x 496, 498 (9th Cir. 2006).

Jinadasa alleges that after he filed his charge of
discrimination, he was

> unlawfully disciplined, retaliated against by
> being suspended and banned from campus for 1
> week.  Was subjected to disparate treatment
> by not being included in key decision making
> that affected the Plaintiff's job
> responsibilities, not invited to office
> parties, put in stressful situations, denied
> employee awards and his communications not
> responded to.

Id., PageID # 518.

In the Fourth Amended Complaint, although Jinadasa does
not allege the dates on which he allegedly suffered the
discrimination with particularity, his allegation of retaliation
in response to his filing of a charge with the EEOC is sufficient
to survive the present motion to dismiss.  A reasonable inference

24

can be drawn that Jinadasa allegedly suffered at least some adverse employment action because he had filed his Charge of Discrimination.  That is sufficient to survive a motion to dismiss, especially when the plaintiff is proceeding pro se and when the November 2012 Charge of Discrimination identifies the time period as having been "immediately" after BYU Hawaii completed its investigation into Jinadasa's EEOC complaint.  See ECF No. 65-4, PageID # 630.

In ruling on the present motion, the court is not considering the detail in the Charge of Discrimination as supplementing the factual detail in the Fourth Amended Complaint, and notes the facts alleged in the Charge of Discrimination only to show that BYU Hawaii does have actual notice of the alleged causal connection.  Given the number of times Jinadasa has amended his Complaint, the court does not believe that forcing him to file another amended complaint will serve any purpose other than to delay the adjudication of the merits of this action.

**F.   Jinadasa's Claim of Intentional Infliction of Emotional Distress is Barred by the Exclusivity Provision of Hawaii's Workers' Compensation Statute.**

Count VI of the Fourth Amended Complaint asserts a claim of intentional infliction of emotional distress.  To prove this tort under Hawaii law, a plaintiff must show: "1) that the act allegedly causing the harm was intentional or reckless,

25

2) that the act was outrageous, and 3) that the act caused

4) extreme emotional distress to another." <u>Hac v. Univ. of Haw.</u>,

102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003); <u>see also</u> <u>Simmons</u>

<u>v. Aqua Hotels & Resorts, Inc.</u>, 130 Haw. 325, 332, 310 P.3d 1026,

1033 (Ct. App. 2013).  "Outrageous" conduct is that "exceeding

all bounds usually tolerated by decent society and which is of a

nature especially calculated to cause, and does cause, mental

distress of a very serious kind." <u>Hac</u>, 102 Haw. at 106, 73 P.3d

at 60.

       BYU Hawaii seeks dismissal of Jinadasa's intentional

infliction of emotional distress claim, arguing that Hawaii's

Workers' Compensation Statute, section 386-5 of Hawaii Revised

Statutes, provides the exclusive remedy for work-related

injuries, including emotional distress related to work.  Section

386-5 states:

> The rights and remedies herein granted to an
> employee or the employee's dependents on
> account of a work injury suffered by the
> employee shall exclude all other liability of
> the employer to the employee, the employee's
> legal representative, spouse, dependents,
> next of kin, or anyone else entitled to
> recover damages from the employer, at common
> law or otherwise, on account of the injury,
> except for sexual harassment or sexual
> assault and infliction of emotional distress
> or invasion of privacy related thereto, in
> which case a civil action may also be
> brought.

       The Hawaii Supreme Court has explained, "Generally, the

workers' compensation scheme serves to bar a civil action for

physical and emotional damages resulting from work-related injuries and accidents." Nelson v. Univ. of Haw., 97 Haw. 376, 393, 38 P.3d 95, 112 (2001).  The Intermediate Court of Appeals for the State of Hawaii has recognized the "sweeping scope" of section 386-5, stating, "Under the workers' compensation statute, the workers' compensation benefits provided to an employee on account of a work injury shall exclude all other liability of the employer to the employee on account of that injury." Yang v. Abercrombie & Fitch Stores, 128 Haw. 173, 177, 284 P.3d 946, 950 (Ct. App. 2012) (quotation marks, alterations, and citation omitted).

In Yang, a store manager was terminated by Abercrombie & Fitch after money in a wallet that had been found in the store had gone missing.  Yang sought and received workers' compensation benefits for resulting stress-related injuries.  She then filed suit against Abercrombie & Fitch for, among other things, intentional infliction of emotional distress.  Id. at 174-75, 284 P.3d at 947-48.  The Intermediate Court of Appeals held that Yang's intentional infliction of emotional distress claim was barred by section 386-5, as it was a personal injury allegedly arising out of and in the course of Yang's employment.  Id. at 177, 284 P.3d at 954.

In Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Haw. 92, 109, 176 P.3d 91, 108 (2008), the Hawaii Supreme Court

examined the language of section 386-5, similarly determining that it

> unambiguously provides that claims for infliction of emotional distress or invasion of privacy are not subject to the exclusivity provision when such claims arise from claims for sexual harassment or sexual assault, in which case a civil action may be brought. Inasmuch as Kamaka has alleged a claim for emotional distress, that does not arise out of sexual harassment or sexual assault, such claim is, pursuant to HRS § 386-5, barred.

Consistent with this reading of section 386-5, the Ninth Circuit has ruled that intentional infliction of emotional distress claims arising out of alleged employment discrimination are barred by section 386-5. <u>See</u> <u>Courtney v. Canyon Television & Appliance Rental, Inc.</u>, 899 F.2d 845, 851 (9th Cir. 1990).

While there are exceptions to section 386-5's exclusivity, they are narrow. The Intermediate Court of Appeals for the State of Hawaii has examined the language excepting from the exclusivity provision any claim "for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy thereto." According to the ICA, the legislature has carved out exceptions for claims of "sexual harassment or sexual assault--not harassment or assault in general; infliction of emotional distress related to sexual assault or sexual harassment--not just any infliction of emotional distress; [and] invasion of privacy related to sexual assault or sexual harassment--not invasion of privacy generally."

28

Yang, 128 Haw. at 177, 284 P.3d at 950).

The Hawaii Supreme Court, in Furukawa v. Honolulu Zoological Society, 85 Haw. 7, 936 P.2d 643 (1997), also recognized that, in connection with a gender and race discrimination claim brought under section 378-2(1) of Hawaii Revised Statutes, a plaintiff could seek emotional distress damages.  In so ruling, the Hawaii Supreme Court reversed the trial court's determination that section 386-5 barred such emotional distress damages.  The Hawaii Supreme Court reasoned that, under section 368-17(a), which pertains to remedies before the Hawaii Civil Rights Commission, the remedies available include compensatory and punitive damages, including damages for injuries and losses caused by employment discrimination actionable under part 1 of chapter 378.  Section 368-17(b) specifically states that section 386-5 does not bar relief for employment discrimination claims filed with the commission.  Id. at 17-18, 936 P.2d at 653-54.  Because the commission could order compensatory damages, the Hawaii Supreme Court stated that both the "Commission and the courts clearly have the power to award compensatory damages, including damages for emotional distress . . . ."  Id. at 18, 936 P.2d at 654.

Furukawa noted that the legislature in 1992 added the following language to section 386-5: "except for sexual harassment or sexual assault and infliction of emotional distress

29

or invasion of privacy related thereto, in which case a civil action may also be brought." See Furukawa, 85 Haw. at 18, 936 P.2d at 654; see also Act 275 (1992 Haw. Reg. Sess.). The Hawaii Supreme Court noted that the legislative history for the addition of this language indicated that it was not intended to affect the scope of remedies under chapter 378, which concerns employment discrimination. Id.

In an unpublished, summary disposition order, the Hawaii Intermediate Court of Appeals stated that "Hawai`i state courts have applied the HRS § 386-5 exclusivity provisions to IIED claims, unless they arise out of sexual harassment, assault, or discrimination" claims. Bolla v. Univ. of Haw., 2014 WL 80554, *2 (Haw. Ct. App. Jan. 8, 2014). In so stating, the court cited Yang, Kamaka, and Furukawa. The Bolla decision may have used "sexual" as an adjective modifying not only "harassment," but also "assault" and "discrimination." Such a reading would be consistent with Yang, which stated that the plain language of section 386-5 bars claims unless they relate to "sexual harassment or sexual assault--not harassment or assault in general." Yang, 128 Haw. at 177, 284 P.3d at 950.

In Chan v. Wells Fargo Advisors, 2015 WL 5011457, *11, (D. Haw. Aug. 24, 2015), this court reconciled the state appellate decisions by reading them "as barring under section 386-5 independent IIED claims that are not related to sex, while

30

not barring emotional distress damages that fall within the allowable compensatory damages recoverable in connection with other cognizable claims."

In its earlier order of May 27, 2015, this court noted that Furukawa could possibly be read as indicating that intentional infliction of emotional distress resulting from any form of discrimination might escape the bar of section 386-5. See 2015 WL 3407832 at *7.  However, the court had no need to actually decide whether section 386-5 barred Jinadasa's claim at that time, saying only that it was declining to find the claim barred by section 386-5.  The court dismissed the IIED claim "[g]iven the bareness of Jinadasa's factual allegations."  Id. at *8.  The court now further clarifies its ruling, determining that Jinadasa's IIED claim is barred by section 386-5 because it arises out of his employment and does not relate to "sexual harassment or sexual assault."

Section 386-5's exception to the workers' compensation exclusivity provision for "sexual harassment or sexual assault" still leaves for consideration the issue of whether Jinadasa may maintain an independent intentional infliction of emotional distress claim arising out of alleged sex discrimination, in addition to seeking emotional distress damages for his sex discrimination claims.  The resolution of that issue turns on

whether his sex discrimination claim can be considered a claim of sexual harassment.

In its 1992 consideration of amendments to section 386-5, the Senate Standing Committee Report on Act 275 states:

> Your Committee finds that the intent of this bill is to enable civil actions arising from allegations of sexual harassment or sexual assault as a blanket exception to the Workers' Compensation exclusivity provision, and has amended the bill accordingly.  In doing so, you Committee is retaining language relating to intentional infliction of emotional distress or invasion of privacy as they are prominent features of sex discrimination, can cause injury, and relate consistently to sexual harassment or assault.

Senn. Stand. Comm. Rprt. No. 2588 (1992 Haw. Reg. Sess.).  This report indicates that the legislature knew the difference between generic sexual discrimination and "sexual harassment or sexual assault," having talked about all of those terms in connection with adding the exception for "sexual harassment or sexual assault."  Had the legislature intended that claims of sex discrimination in a form other than sexual harassment or sexual assault be exempt from the exclusivity provision of section 386-5, the legislature could have easily said so.  It did not.

In a different statutory section enacted at the same time, the legislature specifically referred to sexual harassment and sexual assault as distinguishable from sex discrimination in general.  This separate statutory provisn sheds light on the amendments to section 386-5.  See Agustin v. Dan Ostrow Const.

Co., 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981) ("Words or phrases used in two or more sections of a statute are presumed to be used in the same sense throughout . . . , but by the same token, different words in a statute are presumed to have different meanings."); In re Water Use Permit Applications, 94 Haw. 97, 151, 9 P.3d 409, 463 (2000) ("where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion" (quotation marks, citations, and alterations omitted)).  Specifically, the Hawaii legislature added an exception to the exhaustion requirement to chapter 378-2 claims "for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto."  See Haw. Rev. Stat. § 378-3(10); Nelson v. Univ. of Hawaii, 97 Haw. 376, 394, 38 P.3d 95, 113 (2001).

In French v. Hawaii Pizza Hut, Inc., 105 Haw. 462, 477, 99 P.3d 1046, 1061 (2004), the Hawaii Supreme Court determined that the trial court had correctly dismissed gender discrimination claims as unexhausted.  Clearly, the Hawaii Supreme Court was not treating gender discrimination claims in general as identical to the sexual harassment claims that were excepted from the exhaustion requirement in section 378-3(10).  Thus, the Hawaii Supreme Court appears to have recognized a

33

distinction between "sexual discrimination" and "sexual harassment."  Guided by the parallel words in the differing acts enacted at the same time, this court draws that same distinction and rules that, for purposes of section 386-5, a sexual discrimination claim that does not involve "sexual harassment or sexual assault" is barred by Hawaii's workers' compensation exclusivity provision.

Even if the claim were not so barred, Jinadasa's factual allegations do not describe sufficiently outrageous conduct justifying an intentional infliction of emotional distress claim, which may only be established in cases involving particularly extreme conduct.  Hac, 102 Haw. at 106, 73 P.3d at 60.  This ruling in no way bars Jinadasa from seeking emotional distress damages as part of the requested compensation claims other than Count VI.  That is, Jinadasa's damages, if any, may well include emotional distress under certain other counts that rely on legal grounds for which, unlike a common-law tort claim, section 386-5 presents no bar.

### G.    Jinadasa's Constitutional Claims Are Dismissed As He Alleges No State Action.

Count V of the Fourth Amended Complaint asserts that BYU Hawaii violated Jinadasa's constitutional rights, specifically the First Amendment's protection of the free exercise of religion.  Jinadasa says that BYU Hawaii infringed on that right by barring him from campus and forcing him to miss

worship services and a family wedding at the worship center.  See ECF No. 61, PageID # 535.

The First Amendment protects individuals only against government infringements.  When a plaintiff asserts a First Amendment claim against a private party, the plaintiff must demonstrate that the private party's conduct constitutes state action.  See George v. Pac.-CSC Work Furlough, 91 F.3d 1227, 1229 (9th Cir. 1996).  Because BYU Hawaii is a private party, and because Jinadasa has not shown that BYU Hawaii was acting as or in concert with a state actor, Jinadasa's First Amendment claim is dismissed.

**V.      CONCLUSION.**

Defendants' motion to dismiss is granted in part and denied in part.  The only claims remaining for adjudication are: (1) Jinadasa's disparate treatment gender and race discrimination claims based on Mindy Clark's being paid more and receiving less discipline than Jinadasa under Title VII, Title IX, and § 1981, asserted in Counts I, III, IV; and (2) Jinadasa's retaliation claim under Title VII, asserted in Count II.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2016.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Jinadasa v. Brigham Young University-Hawaii, et al., Civ. No. 14-00441
SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOURTH
AMENDED COMPLAINT